## GENCARELLA v. FYFE.

No. 4354.

United States Court of Appeals
First Circuit.

Dec. 31, 1948.

420

Louis B. Cappuccio and Frank S. Cappuccio, both of Westerly, R. I., for appellant.

Matthew W. Goring, of Providence, R. I. (S. Everett Wilkins, Jr., Frank L. Hinckley, Jr., and Hinckley, Allen, Tillinghast & Wheeler, all of Providence, R. I., on the brief), for appellee.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and PETERS, District Judge.

WOODBURY, Circuit Judge.

This is an appeal by the plaintiff from a judgment entered on a verdict returned by a jury for the defendant in an action of trespass on the case brought originally in the Superior Court of the State of Rhode Island but removed by the defendant to the court below, there being the requisite diversity of citizenship and amount in controversy.

The case at bar is a run-of-the-mill automobile accident case in which recovery is sought for injuries suffered by a child when she was struck while crossing a street in the town of Westerly by an automobile owned and operated by the defendant. The sole question presented on this appeal is whether the court below erred in admitting in evidence as an exhibit a report of the accident made by a local police officer as part of his official duties and filed by him in the records of the Westerly police department.

The police file in question consists of seven pages on six separate sheets. One of these is a form on which are printed questions to be answered by the investigating officer. These questions are of a routine nature such as the date and time of the accident, its location, the weather conditions then prevailing, the names of the persons involved, the injuries sustained, a description of the vehicle or vehicles involved and its or their mechanical condition as to brakes, etc. Others are daily reports containing accounts of the action taken in the premises by the officer reporting. On another page is a diagram of the street upon which the accident occurred showing the route taken by the defendant's car, the location of lights, buildings and other pertinent features of the scene, and the balance of the file consists of two statements, one made by the defendant to the reporting officer soon after the accident and the other a summation of the entire affair made by the investigating officer himself.

The defendant is reported to have said in his statement to the officer that he was stopped by a red traffic light just before the accident, that when the light turned green he started ahead at a slow rate of speed, that he had travelled only a short distance "when suddenly a small child popped out in front of my car, from the sidewalk on my right," that he was then going about fifteen miles per hour, that the child was "knocked about three yards, and the car was stopped in about two yards," that he got out of his car, that a Mrs. Turissi came from the sidewalk on his left and picked the child up, that one Frank Cherenzia, who was travelling behind him in a truck, took the child in his arms, and that he and Cherenzia took the child first to a doctor and then to a hospital. The investigating officer's summation, after recounting his assignment to investigate the accident and his trip to the scene of it with the defendant, gives the defendant's version of the accident substantially as contained in the defendant's statement and then proceeds:

"Mr. Fyfe said that a man named Frank Cherenzia who was behind him in a truck said that it was not his fault. Mrs. Turissi who lives at 147 Canal Street picked up the child said that she saw the accident from the other side of the street and that it was not Mr. Fyfe's fault. She said that the child ran out into the street in front of the car.

* * * * * *

"I talked with the child's mother Mrs. Gencarella and she told me that a priest had told her that the child had run out in front of a car and that the driver was not at

fault. She said that she did not blame the driver of the car. Mrs. Gencarella's brother-in-law talked with Mr. Fyfe as Mrs. Gencarella was too upset and he told Mr. Fyfe that they did not blame him."

The entries in the report made on the reporting officer's personal knowledge, such as the time the defendant came to the police station to report the accident, his mental and physical condition at that time and the mechanical condition of his car, what the officer observed and the measurements he made at the scene of the accident etc., might, if the proper foundation were laid, be used to refresh the officer's recollection should he be called to the stand as a witness. McWilliams v. Lewis, 75 U.S. App.D.C. 153, 125 F.2d 200, 201. Again given the proper foundation, the above parts of the report might even be put in evidence as an exhibit as a record of the officer's past recollection, should the matters stated therein prove material to any disputed issue in the case. But we are not concerned with these parts of the report alone. We are concerned with the admissibility of the report in its entirety, and as already appears, parts of it contain the rankest hearsay.

The defendant concedes as he must (see Hoffman v. Palmer, 2 Cir., 129 F.2d 976, affirmed sub.nom. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719; see also New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297) that the police report as a whole was not admissible in evidence as an entry made in the regular course of business either under the common-law exception to the hearsay rule or under the "Federal Shop Book Rule" as it has come to be called. 28 U.S.C.A. § 695 [now § 1732]. Not does he contend that the statements in the report attributed to Mrs. Turissi, Mrs. Gencarella or Mr. Cherenzia are anything but hearsay if offered to prove the defendant's freedom from causal negligence. His position is that counsel for the plaintiff made the entire report admissible by his examination of the officer who made it while the latter was on the stand testifying as a witness in the case. We do not agree.

The colloquy between counsel and the court below with respect to the report is too long to quote in full. A summation of it with limited quotations will have to suffice.

Counsel for the plaintiff called the officer who made out the report as his first witness. After identifying him and eliciting the information that the officer was in the police station when the defendant presented himself to report the accident, that the officer was ordered to go to the scene with the defendant and went there, and that the officer made certain observations when he arrived, counsel for the plaintiff asked the officer if he had made a report that night. The officer said that he had, and counsel then asked if the report was based on what the officer saw, or on what he had been told by other persons. Defendant's counsel then objected and plaintiff's counsel replied that he was "laying a foundation."

In the colloquy which ensued it appeared that counsel for the plaintiff was attempting to determine what parts of the report were based on the officer's personal knowledge and what parts upon hearsay, and that counsel for the defendant, while not objecting to the admission of the entire report, was objecting to the admission of only parts of it. The court intimating that counsel for the defendant ought to have access to the report for the purpose of cross-examination, plaintiff's counsel then asked that the report be marked for identification. It was so marked and counsel continued his interrogation of the witness with respect to what parts of the police report were based upon the witness' personal knowledge and what parts were based upon statements made by others. Counsel for the defendant reiterated his objections to this line of questioning, but indicated his willingness, even his desire, that the entire report go into evidence as an exhibit, and the court finally sustained the objection saying to plaintiff's counsel "If it is in the report, you must introduce it so that an opportunity may be given to Mr. Andrews [counsel for the defendant] to cross-examine on it. You can't pick out parts here and there. I will sustain the objection."

Counsel for the plaintiff then continued his direct examination of the officer along

other lines, and when counsel for the defendant took the officer on cross-examination he immediately inquired with respect to factual data in the report, measurements and the like, and then the cross-examination proceeded as follows:

"X-Q. Mr. Fyfe said he was going about 15 miles an hour? A. That is true.

"Mr. Cappuccio: Your Honor, I object to that. He is trying to introduce a self-serving declaration as to what Mr. Fyfe said.

"The Court: The point is this. You may later on pick it up and as long as he asks questions on it now, it becomes admissible. You then have your chance.

"Mr. Cappuccio: I am objecting to my brother reading into the record—

"The Court: Have you any objection to its being marked Plaintiff's Exhibit 1 then?

"Mr. Cappuccio: Your Honor, the only objection I have is this. I tried to elicit from the witness as to whether it was based on hearsay or what he saw.

"The Court: Mr. Andrews, by his examination of this witness on this report, gives you the opportunity to further examine the witness. It ought to be offered in evidence in view of the record as it now stands, in the Court's opinion, so the jury may have it.

"Mr. Cappuccio: Your Honor, for the record I want to object to the introduction of any matter or the reading into the record of any matter there that is based on statements made by Mr. Fyfe himself or by any other witness the police may have interrogated."

Further colloquy ensued which serves only to emphasize the positions taken by counsel on both sides and the court with respect to the introduction of the report in evidence, but adds nothing of consequence to that which already appears.

At the conclusion of the plaintiff's evidence in chief, counsel for the defendant called the defendant himself as his first witness and then immediately offered the police officer's report as an exhibit. Counsel for the plaintiff did not object to the introduction of the parts of the report made on the officer's own knowledge, but did object to the introduction of the entire report. The court however ruled "We can't separate it. We can't separate exhibits in piecemeal. Either they go in as a whole or they are excluded," and then admitted the entire report, saying that since counsel for the defendant had disclosed part of the report to the jury through his cross-examination of the officer who made it, "The jury should have it all or none," and that the plaintiff's rights were fully protected by his right to examine the officer further with respect thereto.

We do not understand what purpose counsel for the plaintiff may have had in mind when he inquired about the report in the first place. But whatever his reasons for doing so may have been, we think it clear that he did not go far enough to render the entire report admissible in evidence. Clearly the report is severable. The hearsay parts can readily be separated from the parts based on the reporting officer's personal knowledge, and the latter parts put in evidence, provided a proper foundation were laid, without putting in the rest, and we cannot see that inquiries directed toward severing the report made all of it admissible. The doctrine of testimonial completeness, heavily relied upon by the defendant-appellee, is without bearing since the statements attributed in the report to by-standers have no connection with the measurements etc. contained therein. Had the plaintiff laid the proper foundation, which he may have been trying to do, and having done so had then seen fit to put in evidence only a portion of the part of the report he had qualified for admission, i.e. only a portion of the part dealing with measurements and the like, the doctrine of testimonial completeness would permit the defendant to put in the rest of the admissible part of the report so that the jury would not get a distorted picture of the scene. But the admissible and the inadmissible parts of the report were readily severable from one another, and the separate parts have no bearing to explain or qualify each other. Under these circumstances the introduction in evidence of the admissible part of the report cannot be

used to sanction the introduction of the inadmissible part under the doctrine of testimonial completeness.

■ The hearsay contained in the report being obviously highly prejudicial, there is nothing for it but to order the case tried over again.

The other argument advanced by the appellee in support of the judgment appealed from has been considered but we regard it as so wholly without merit that no useful purpose would be served even by stating it.

The judgment of the District Court is vacated and the case is remanded to that court for further proceedings consistent with this opinion, with costs to the appellant.