**PATTON et al. v. BALTIMORE & OHIO R. CO. (Duquesne Slag Products Co., third-party defendant).**

**Civ. A. 8634.**

United States District Court
W. D. Pennsylvania.

Aug. 28, 1951.

James P. McArdle, of Pittsburgh, Pa., for plaintiff.

Marvin D. Power, Margiotti & Casey, of Pittsburgh, Pa., for defendant Baltimore & Ohio R. Co.

Donald M. Bane, Prichard, Lawler, Malone & Geltz, of Pittsburgh, Pa., for defendant Duquesne Slag Products Co.

BURNS, District Judge.

Four slag cars, which were owned by defendant ("B & O") and which were being unloaded by third-party defendant ("Duquesne"), while parked on a downgrade, began to roll downhill and crashed into other cars at the foot of the slope. John Patton, who was working at the bottom of that hill, was killed instantly. Alleging negligence and violation of the federal Safety Appliance Act, 45 U.S.C.A. § 1ff., Patton's widow filed the complaint at bar under the Pennsylvania death and survival statutes. 12 P.S. § 1601 et seq., 20 P.S. §§ 320.603, 320.613. Defendant removed the case to this Court and joined Duquesne as third-party defendant. A jury trial resulted in a verdict in favor of plaintiff and against both B & O and Duquesne.

Without reviewing the evidence in detail, I deem it sufficient to note that there was abundant testimony to support the conclusion of the jury that both B & O and Duquesne had been guilty of negligence toward the deceased. As to B & O, it was disclosed that the B & O slag cars were generally known to be equipped with inadequate brakes; and the inference was not difficult to draw that the cars here in question, only shortly before the accident under the control of B & O, were subject to the same infirmity, in that they began and kept rolling despite attempts to stop them. Cf. Long v. Union R. Co., 3 Cir., 1949, 175 F.2d 198. As to Duquesne, the jury was entitled to decide that a reasonably prudent unloading operation would have called for something more than the buffeting of cars, which Duquesne had parked on a slope, by a heavy crane, without additional insurance against the very event which occurred.

At the trial, B & O pressed the legal argument that, since deceased was not an employee of B & O, the federal Safety Appliance Act could not be here invoked in favor of his administratrix' complaint. Any such restrictive application of legislation like the federal Safety Appliance Act I should be most reluctant to adopt. Fortunately, the law is clear that non-employees within the circle of risk are also covered by the Act. See Fairport, P. & E. R. Co. v. Meredith, 1934, 292 U.S. 589, 54 S.Ct. 826, 78 L.Ed. 1446.

B & O also complains that this Court charged the jury to bring in a single verdict, rather than the two verdicts which courts of Pennsylvania would require under similar circumstances. I am satisfied that the form of the verdict is a matter so purely procedural that a federal court need not look to the state practice. The real advantage of eliminating confusion which juries regularly experience in attempting to separate the Pennsylvania death and survival statutes seems to me to warrant the course of action here followed. Defendant could not possibly have been harmed if—as I believe was the situation—the jury was given the proper yardstick for measuring the damages.

In this connection, Duquesne points out that it was joined as third-party de-

fendant more than one year after Patton's death, and that the statute of limitations under the Pennsylvania wrongful death act is one year. See Stegner v. Fenton, 1945, 351 Pa. 292, 40 A.2d 473. B & O has at no time raised this defense. It is true that the verdict, $65,000, does not disclose what portion of the sum awarded was attributable to the wrongful death act. Let it be assumed *arguendo* that Duquesne can be held liable only under the Survival Act. Since the liability of Duquesne, nevertheless, under the provisions of its Workmen's Compensation Act contract with Mrs. Patton, is limited to $13,039.96, and since the right of B & O to contribution by Duquesne under the Survival Act portion of the recovery would unquestionably have been well in excess of the $13,039.96, I can see no useful purpose in awarding a new trial for that reason.

B & O takes issue with that part of the charge of the court which directed the jury under what circumstances it would return an award for money damages. As I read the charge, there was not the slightest hint that a workmen's compensation act was here involved. Rather, the charge emphasized that a finding of negligence was prerequisite to any consideration of damages; and I believe that an inference cannot and should not be drawn that the jury wilfully ignored its instructions and found B & O liable only because the jury wanted to make an award.

The only remaining point which here requires dicussion is that of Duquesne concerning a moulding of the verdict. All agree that Maio v. Fahs, 1940, 339 Pa. 180, 14 A.2d 105, is controlling on this issue. As I understand that opinion, Duquesne is not entitled to a moulding of the verdict at this time; only when it has paid "to the then legally designated proper party the total of what under the Workmen's Compensation Agreement it was bound to pay", 14 A.2d at page 111, is Duquesne entitled to have plaintiff's judgment against it satisfied of record. Cf. Baccile v. Halcyon Lines, 3 Cir., 1951, 187 F.2d 403.