## McKEE v. JAMESTOWN BAKING CO.
### Inc. (Burns et al, third party defendant).
#### Civ. A. 8289.

United States District Court
W. D. Pennsylvania.
Jan. 4, 1952.

Louis C. Glasso, and Zeno Fritz, of Pittsburgh, Pa., for plaintiff.

Harold E. McCamey, and Arthur G. Stein, Dickie, McCamey, Chilcote, Reif & Robinson, of Pittsburgh, Pa., for defendant and third-party plaintiff.

Donald J. Dennison, and Raymond E. Brown, of Brookville, Pa., and Willis, McCook Miller, Kirkpatrick, Pomeroy, Lockhart & Johnson, of Pittsburgh, Pa., for third-party defendant.

BURNS, District Judge.

On a clear, dry, warm day in June, 1949, a truck owned and operated by defendant baking company crashed into a heavy steel cable strung across a street in St. Marys, Pennsylvania. George McKee, a foreman employed by C. F. Burns, third-party defendant, was instantly killed as a result of that impact. The jury returned a verdict in favor of plaintiff, McKee's administratrix, against both defendant and third-party defendant, in the sum of $69,-769.55. Diversity of citizenship being the basis of federal jurisdiction, in this case Pennsylvania law governs wherever applicable.

Defendant here seeks judgment or, in the alternative, a new trial. The motion for judgment is asserted under the theory that defendant was not guilty of negligence and further that McKee was guilty of negligence as a matter of law. With this argument I cannot agree.

Review of the record discloses credible evidence from which the jury could find that the employee of defendant who was driving the bakery truck was proceeding without due care under the circumstances. The jury was particularly instructed, in accordance with the Pennsylvania decisions, that the driver did have the right to assume that the street was free of obstructions which he could not be reasonably expected to see, unless he received effective and timely warning of the presence of any such obstruction. What defendant effectually requests is a rule of thumb that an effective warning must include the waving of a red flag, regardless of the conditions of visibility, the amount of traffic on the street, the immediate nearness of a group of laborers, the gesticulations of an individual standing between the bakery truck and the laborers, and the like. I think the care exercised by the truck driver was for the jury to determine.

The corollary argument of defendant, that McKee was guilty of contributory negligence, also must fail. Defendant says that, because McKee was foreman of the gang, the finding by the jury that C. F. Burns was negligent necessarily implies that McKee, as the person in control, was negligent. All those testifying to the events immediately preceding the accident, however, agree that McKee told Robert Henery, the Burns employee whom McKee detailed to warn oncoming traffic, to "go down and flag". In view of the evidence that the truck did have at least one red flag, it was hardly speculation if the jury concluded that McKee properly performed his function as foreman in placing Henery on duty with instructions to "flag", and that the failure of Henery to obey that instruction was imputable to Henry's employer, C. F. Burns, but not to McKee, who properly discharged his duty of care.

The motion for a new trial primarily relies upon the ruling of this court which excluded from evidence a police report prepared by the police chief of St. Marys. Reliance is placed upon Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 1950, 183 F.2d 467, and the "business records" statutes. It might well be sufficient to note that, in any event, the court ruling was not prejudicial error, in that the police chief himself took the stand twice and was subjected to intensive questioning; so that it may be doubted whether the report could have thrown further light upon the fatal occurrence. Because the question of admissibility is one likely to recur, however, it might be helpful to set forth the view of this Court on the applicability of Moran v. Pittsburgh-Des Moines Steel Co.

As is clearly developed by Judge Augustus Hand in Pekelis v. Transcontinental & Western Air, 2 Cir., 1951, 187 F.2d 122, 129–131, certiorari denied 1951, 341 U. S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374, the business records statutes were devised to facilitate admission of records which experience has shown to be trustworthy. Ex-

796

amination of the police report here involved discloses that, for the most part, it was a summary, in the officer's own words, of what he believed the people he had interviewed had told him. There was little or no occasion in that report to call upon any expertise he may have had; nor did he attempt in his report to collate, interpret, or otherwise conclude from the information what had happened. This I deem to be vastly different from a report prepared by a group of experts; which report, although based in part upon hearsay, weighs information and draws inferences. I believe that admission of this particular police report, presumably a précis of testimony which those interviewed would be prepared to give under oath, could serve no useful purpose warranting deviation from the traditional rules of evidence. This conclusion is in full accord with Gencarella v. Fyfe, 1 Cir., 1948, 171 F.2d 419.

The refusal to instruct the jury as requested in the fourth and fifth points for charge submitted by defendant was based upon the desire to avoid needless repetition. I believe the jury was adequately informed as to the law governing obstructions on public streets.

■ Finally, defendant urges that the verdict was excessive. The jury probably did not under-evaluate the degree of damages to which plaintiff was entitled; but I am not prepared to say that the jury was generous to a fault. All the testimony indicated that decedent was an ambitious, talented young man with considerable promise. Virtually all his earnings were turned over to his wife to meet the family expenses. In addition, he did odd jobs about the house and spent time with his son. The question of his earning power was argued at length by counsel in their closing speeches, and I can see no justification for setting aside a figure at which a conscientious jury carefully arrived after mature consideration.

Third-party defendant has moved for a moulding of the verdict. The identical question was considered in Patton v. Baltimore & O. R. Co., D.C. W.D.Pa. 1951, 99 F.Supp. 455, 458, and need not be here reiterated.