Miguel Moran RAMIREZ, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16894.

United States Court of Appeals
Ninth Circuit.

Aug. 23, 1961.

Miguel Moran Ramirez, Los Angeles, Cal., in pro. per., David Dooley (appointed attorney) San Francisco, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Division, J. Brin Schulman, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before HAMLEY and JERTBERG, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge.

## I. Background

On August 21, 1958, a jury found appellant guilty on three counts of an indictment charging him with having violated 21 U.S.C.A. § 174. He filed a notice of appeal, and this Court has jurisdiction by virtue of 28 U.S.C. §§ 1291 and 1294(1). Before turning to the points appellant has specified on this appeal, we deem it advisable to summarize certain portions of the testimony.

The principal government witness was Emory Slack, a Special Employee of the Bureau of Narcotics. During the evening of April 26, 1958, Slack had a telephone conversation with appellant's nephew about the possibility of purchasing narcotics from appellant, and, the following day, the nephew introduced appellant to Slack over the telephone. During the morning of April 28, 1958, appellant telephoned Slack and arranged a meeting place. Shortly thereafter, appellant and Slack met, drove in the latter's automobile, and finally began to discuss narcotics transactions. Slack testified that appellant told him that he could supply Slack with any amount of narcotics that Slack would need; that all he had to do was to telephone Mexicali, and "within a few hours a man would be on his way with the junk;" and that although he had to be very careful, because of prior deportations and a federal criminal record, he had been supplying narcotics for two years and "it had been quite a lucrative thing for him." Before parting company, appellant advised Slack that he would notify him as soon as his shipment of narcotics arrived.

On April 30, 1958, appellant telephoned Slack and arranged a meeting place with him. Slack then met with three Federal Narcotics Agents. The latter searched him and his automobile for narcotics, discovered none, gave him $425.00 in official advance funds and retained a list of the serial numbers of the bills. Slack then met appellant at an ice cream parlor. Appellant advised Slack that, after some delay, the narcotics had arrived and he was ready to make a deal. This conversation was overheard by a Federal Narcotics Agent, who purposefully had been sitting next to Slack, and who substantiated Slack's version of it. Appellant and Slack then left the ice cream parlor, drove around for awhile in Slack's automobile, went to Slack's home, and finally selected five "drop points" for narcotics. Later the same day appellant telephoned Slack and, by means of a prearranged code, informed him that he should pick up the narcotics at drop point number three. Slack then contacted the Federal Narcotics Agents, was searched, as was his automobile, and then drove to the designated point with a Federal Narcotics Agent. Slack picked up the receptacle containing the narcotics and turned it over to the Federal Agents. The same evening, appellant telephoned Slack to inquire if the latter had picked up the narcotics.

On May 1, 1958, appellant again called Slack and arranged a meeting place. Slack went to the Federal Narcotics Agents, who conducted the usual search and made the customary check of official advance funds. Slack met appellant and, under the surveillance of a Federal Narcotics Agent, handed the $425.00 in official advance funds to appellant.

On May 6, 1958, Slack received another telephone call, this time from a woman who identified herself as appellant's wife and who inquired whether Slack wanted more narcotics. The following day, appellant twice telephoned Slack, and during the second conversation arranged a meeting place. Before driving to the designated place, with a Federal Narcotics Agent hidden in the trunk of his automobile, Slack went through the usual procedures of being searched by Agents and receiving $500.00 in official advance funds, the serial numbers of the bills having been listed. Under the surveillance of a Deputy Sheriff and a Federal Narcotics Agent, Slack handed the money to

appellant and then went to a newly-selected drop point to retrieve the narcotics, which he turned over to the Agent who all this time had been hiding in the trunk.

On May 11 and 13, Slack received telephone calls from appellant's wife. She inquired as to how much narcotics Slack next wanted and told him that she and her husband were expecting a new supply within a day or two. On May 14, 1958, appellant telephoned Slack and arranged to meet him at the latter's home.

Appellant arrived at Slack's home, then left and returned with his wife and children. A Deputy Sheriff, who had been hiding in the bedroom, came forward and advised appellant that he was under arrest for violation of federal and state narcotics laws. Appellant's wife was not in the room in which appellant's arrest was made, so the Deputy asked appellant to call her in. When appellant did, the Deputy advised her that she also was under arrest for violation of federal and state narcotics laws. After the arrests were made, the Deputy searched appellant for weapons and asked his wife to put her purse on the counter, which she did. The Deputy asked her if she had any money; she responded affirmatively; he asked her to open her wallet; she did; the Deputy looked inside, saw money, but did not touch it, and then searched the purse for weapons.

Shortly thereafter, three Federal Narcotics Agents arrived, and in the presence of one of them, the Deputy asked appellant's wife where she had obtained the money. She replied that it was hers and that it had been received from a sale of property in Mexico. A little later, she repeated her story to still another Federal Narcotics Agent, and when the Agent asked appellant if the money belonged to him, appellant replied that it belonged to his wife.

One of the Agents, who speaks Spanish, testified that he overheard appellant ask his wife: "What if they search?" and she responded: "It is well hidden." When Slack later arrived and was seated next to appellant's wife, she volunteered the same information to him.

In the early evening, appellant's wife requested that she be allowed to take her children home to change their clothes. Consequently, appellant, his wife, and the children were taken to their home by three officers. The officers made various unsuccessful searches of the home, and then appellant and his wife requested that they be allowed to converse privately. Permission was granted by the Agent then in charge, and a three or four minute conversation between appellant and his wife ensued. The Agent told appellant's wife that she should finish bathing the children, since they had to go downtown; she began to cry; and appellant asked to talk to the Agent alone. He told him that he would show the Agent where he had hidden some narcotics. Then, appellant, the Agent and the Deputy drove to Slack's home, where appellant dug up a caché of narcotics near the back steps. Appellant was taken to the Federal Building and was arraigned the following morning.

All of the substances which were picked up at the various drop points and at Slack's home were found to contain heroin. Appellant was convicted on two counts charging unlawful sales of heroin and on one count charging unlawful concealing, receiving and facilitating the transportation and concealment of heroin. His wife, charged in two of the counts, was acquitted.

## II. Appellant's Specifications of Error

■ A. As we understand appellant, he complains that, in the first place, his wife's arrest was illegal. It needs no citation of authority for this Court to hold that he has no standing to complain of the alleged unlawfulness of her arrest as such. But, the appellant asserts, he should have standing in this particular case because, assuming his wife's arrest to have been unlawful, such fact vitiates the search for and seizure of the federal advance funds from her purse, and yet, he maintains, those advance funds were admitted into evidence against him. At the conclusion of the government's case,

appellant moved to suppress the money which was obtained as a result of the search of his wife's purse. The motion was denied. Presumably, appellant was relying on Rule 41(e), Fed.R.Crim.Proc., 18 U.S.C.A., which provides that a "person aggrieved by an unlawful search and seizure" may move to suppress any evidence obtained thereby. It is clear that appellant had no standing to make such a motion, for in the recent case of Jones v. United States, 1960, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697, the Supreme Court observed:

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else."

In this connection, it is important to note that at all times both appellant and his wife have asserted that the seized money belonged to the wife, not to appellant. We cite, by way of example, the following cases which have held that in order to suppress evidence the movant must at least claim that he owned the seized property, that he had a proprietary or possessory interest in it, or that it "belonged" to him. Elkins v. United States, 9 Cir., 1959, 266 F.2d 588, 595, reversed on other grounds 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669; United States v. Ponder, 4 Cir., 1956, 238 F. 2d 825, 829; Wilson v. United States, 10 Cir., 1955, 218 F.2d 754, 756; Reichert v. Commissioner, 7th Cir., 1954, 214 F.2d 19, 24, certiorari denied 1955, 348 U.S. 909, 75 S.Ct. 294, 99 L.Ed. 713; Gorland v. United States, 1952, 91 U.S.App.D.C. 90, 197 F.2d 685, 686.

We hold, then, that appellant has no standing to complain either of the validity of his wife's arrest or of the seizure of evidence from her, regardless of whether the evidence was admitted against him.

■ B. We now turn to appellant's argument that the trial court erred by limiting the cross-examination of the Deputy Sheriff who arrested appellant and his wife. At the trial, appellant's counsel had asked the Deputy whether he had ever received information from Special Employee Slack prior to the arrests in question. The answer was in the affirmative, and in answer to the further question as to during what period of time the Deputy had received information from Slack, the Deputy replied that it had been from October 1957 to the present. Appellant's counsel then asked: "Have you made any arrests in connection with that [i. e., the information received from Slack]?" The trial court sustained an objection by the government.

To begin with, we gather from his brief that appellant was seeking to demonstrate that the Deputy's informant was not known by him to be reliable and that therefore he lacked probable cause for the arrest of appellant's *wife*. (At no time during the trial or on appeal, save for one passing reference in his brief here, has appellant even remotely questioned the validity of *his* arrest.) Assuming, *arguendo*, that the trial court did err, then there is still no ground for reversal, since it was harmless error within the meaning of Rule 52(a), Fed. R.Crim.Proc. We say this because, as we already have held, appellant has no standing to complain of the arrest of his wife or the search and seizure incident thereto, and if he cannot so complain, he was not prejudiced by not being able to ask a question relating to those matters.

■ But, in his brief, appellant goes further. He now suggests that the question was relevant not only to test the Deputy's belief in Slack, but also to enable the jury to judge the credibility of the principal government witness. If, then, the purpose of the question was to impeach Slack and not to attack the Deputy's grounds for the arrest, the question was improper, for the general rule is that questions to one witness to impeach the reputation of another wit-

ness may only call for a statement as to the latter's reputation in the community for truth and veracity. D'Aquino v. United States, 9 Cir., 1951, 192 F.2d 338, 372, certiorari denied 1952, 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343; Powell v. United States, 9 Cir., 1929, 35 F.2d 941, 942; McCormick, Evidence, sec. 44 (1954). Furthermore, the admissibility of impeaching evidence is within the trial court's discretion, Gage v. United States, 9 Cir., 1948, 167 F.2d 122, 125, and it cannot be said that there was an abuse of that discretion where, as here, the question cannot reasonably be said to shed light on whether Slack was testifying truthfully.

Finally, appellant contends that had the question been allowed, the matters as disclosed by Exhibits A and B might have come before the jury. We see no connection between the question and the exhibits, and in any event, we shall observe *infra* that there is no conceivable theory under which those proposed exhibits might be admitted.

■ C. Next, we consider appellant's contentions that his admissions that he would show one of the Federal Narcotics Agents where he had hidden certain narcotics, along with the narcotics themselves, were improperly admitted. At the time of the admission of the statements into evidence, appellant did not object. Therefore, we will not consider his complaint on appeal, unless, of course, there was present the plain error contemplated by Rule 52(b), Fed.R.Crim. Proc. Fiano v. United States, 9 Cir. 1959, 271 F.2d 883, 885, certiorari denied 1960, 361 U.S. 964, 80 S.Ct. 593, 4 L. Ed.2d 545; Hill v. United States, 9 Cir., 1958, 261 F.2d 483, 489. Similarly, since appellant neither moved to suppress the narcotics themselves pursuant to Rule 41(e), Fed.R.Crim.Proc., nor objected to their admission at any time, we likewise will not consider his specification of error, absent a showing of plain error. Az Din v. United States, 9 Cir., 1956, 232 F.2d 283, 285, certiorari denied 1956, 352 U.S. 827, 77 S.Ct. 39, 1 L.Ed.2d 49; Zachary v. United States, 6 Cir., 1960,

275 F.2d 793, 795-96 (opinion by Judge Pope of this Court), certiorari denied 1960, 364 U.S. 816, 81 S.Ct. 46, 5 L.Ed.2d 47; United States v. Herskovitz, 2 Cir., 1953, 209 F.2d 881, 886.

■■ In any event, we find no plain error. Appellant's assertion that the admission and discovery of the narcotics are the fruit of the allegedly illegal search and seizure of the official advance funds is untenable, for, among other things, there is no necessary connection between the two occurrences. Nor is there any substance to appellant's allegation that his admission was coerced by threats to his wife and children. The record indicates that appellant was ready to show the Federal Agent his narcotics after he had discussed the matter with his wife and that there were no promises or threats either to appellant or his wife. The Agent's statement to the wife that she should bathe her other child as they had to go downtown can hardly be construed to be a threat. Nor do we find merit in appellant's contention that the trial court erred in admitting evidence of appellant's admission before the existence of the *corpus delicti* was established. In the first place, the government did not have to prove that appellant possessed narcotics, for possession is not an element of any of the counts of the indictment; that is, the statutory presumption of guilt from possession of such drugs is a statutory rule of evidence only. Rodella v. United States, 9 Cir., 1960, 286 F.2d 306. In any event, although the rule is that extra-judicial admissions must be corroborated by substantial independent evidence which would tend to establish the trustworthiness of the statement, the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti*. Opper v. United States, 1954, 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101; Smith v. United States, 1954, 348 U.S. 147, 156, 75 S.Ct. 194, 99 L.Ed. 192. Thus, to the extent that appellant argues that the corroborative evidence must be sufficient, alone, to prove the *corpus delicti,* he is wrong. Furthermore, a study of the record re-

veals that there was corroborative evidence sufficient to meet the test set forth in the Opper and Smith cases, supra. Also, appellant is incorrect in his assertion that the corroborative evidence must have been admitted before the introduction of the admission. The cases cited by appellant do not support his contention; in fact, in one of them, Adolfson v. United States, 9 Cir., 1947, 159 F.2d 883, 888, certiorari denied 1947, 331 U.S. 818, 67 S.Ct. 1307, 91 L.Ed. 1836, this Court stated the following rule:

"If proof in the nature of independent corroborative evidence supports the introduction of a confession, the time of its introduction is not important. It is sufficient if it is forthcoming at some point in the trial."

There was no error in admitting either the admission or the narcotics themselves.

D. Next, we consider appellant's argument that it was error for the trial court to have given an instruction on constructive possession. To begin with, appellant has no standing to complain at this juncture, for he did not object to the instruction at the time it was given. Rule 30, Fed.R.Crim.Proc. In any event, the charge was proper, for this Court has but recently reasserted the rule that possession in cases of this type may be either actual or constructive. Rodella v. United States, 9 Cir., 1960, 286 F.2d 306, 312, and cases cited therein.

E. We now consider appellant's contention that it was error for the trial court not to have instructed the jury on the issue of probable cause as justifying the arrest of appellant and his wife and the search and seizure incident thereto. Initially, we point out that we already have held that appellant has no standing to complain of the arrest of his wife and the subsequent search and seizure. Secondly, the record does not reveal that he ever put into issue in the trial court the question of the validity of his arrest. Thirdly, the appellant cannot complain now, for he did not object to the failure to instruct on these issues at the time the court gave its charge to the jury. Rule 30, Fed.R.Crim.Proc. Finally, the issue of probable cause for arrest and search and seizure is, in a criminal case, a question for the court, not the jury. Steele v. United States, 1925, 267 U.S. 505, 511, 45 S.Ct. 417, 69 L.Ed. 761; Simmons v. United States, D.C.Cir., 1953, 206 F.2d 427, 429; Burris v. United States, 5 Cir., 1951, 192 F.2d 253, 254-55.

F. We turn, now, to appellant's assertion that the case presents a question of entrapment as a matter of law. At the trial, appellant specifically stated to the trial court that he was not raising the defense of entrapment and that he did not desire an instruction on the subject. He cannot raise it for the first time on appeal. Cellino v. United States, 9 Cir., 1960, 276 F.2d 941, 947. In any event, appellant, to say the least, has taken a thoroughly inconsistent position on this matter. Throughout, he has maintained that he did not commit the crimes charged. It logically follows that absent the commission of a crime, there can be no entrapment. Thus, even if we overlooked his waiver of the issue at the trial stage, appellant is in no position to complain. Eastman v. United States, 9 Cir., 1954, 212 F.2d 320, 322; Ware v. United States, 8 Cir., 1958, 259 F.2d 442, 445; Rodriquez v. United States, 5 Cir., 1955, 227 F.2d 912, 914.

G. Appellant next asserts that the trial judge should have disqualified himself. By not having raised the issue in timely fashion below, the appellant has waived any objection. Kramer v. United States, 9 Cir., 1948, 166 F.2d 515, 518. The gist of appellant's complaint, however, based as it is on allegedly improper questions to witnesses and comments on the evidence, may be deemed to be an allegation that defendant was denied a fair trial. But, even then, appellant cannot complain now, since he registered no objection either to the questions or the comments, see Banning v. United States, 6 Cir., 1942, 130 F.2d 330, 339, nor did he object to the

adequacy of the trial court's instruction that, regardless of what the court may have said or intimated, the jury was sole judge of the appellant's guilt or innocence. Rule 30, Fed.R.Crim.Proc. In any event, a study of the record does not reveal that the trial court overstepped its proper function.

H. We next deal with appellant's contention that his sentence of thirty-five years is excessive and that it constitutes cruel and unusual punishment within the meaning of the Eighth Amendment to the Constitution. Since the sentence was within the statutory limits, this Court has no control over it. Gallego v. United States, 9 Cir., 1960, 276 F.2d 914, 918. Furthermore, we reassert our holding in Gallego that the statute providing for the sentences does not run afoul of the Constitution.

I. Next, we consider appellant's contention that he was deprived of due process of law because certain defense witnesses declined to testify on the grounds of possible self-incrimination.

Appellant's contention deserves little attention. The witnesses had every right to protect themselves by invoking the privilege accorded to them under the Fifth Amendment to the Constitution. Quite aside from the facts that we do not know whether the trial court would have admitted their testimony and that we can only speculate as to what their testimony might have been, we refuse to adopt a rule of law to the effect that appellant has been deprived of the right to due process merely because other persons, who might aid his cause, have, in refusing to do so, claimed the protection of a constitutional privilege which undeniably is theirs.

J. Finally, we deal with appellant's prayer for a remand to the trial court so that that court might grant a new trial on the ground of newly discovered evidence. Appellant's position ignores, in the first instance, our holding in Zamloch v. United States, 9 Cir., 1951, 187 F.2d 854, 855, that application for a new trial on the ground of newly dis-

covered evidence must first be made to the trial court and that this Court will remand only if the trial court signifies a willingness to grant the motion.

Even if the issue were properly before this Court, however, we would not grant a remand. There is nothing in the record from which we may infer diligence in discovery of the "new evidence" on the part of appellant. Pitts v. United States, 9 Cir., 1959, 263 F.2d 808, 810, certiorari denied 1959, 360 U.S. 919, 79 S.Ct. 1438, 3 L.Ed.2d 1535. Furthermore, the only value of the evidence would be to impeach a witness, and in light of the overwhelming evidence of appellant's guilt, it cannot be said to be sufficient to result in an acquittal. That being so, a new trial could not be granted. Pitts v. United States, supra, 263 F.2d at page 810; United States v. Switzer, 2 Cir., 1958, 252 F.2d 139, 145–46. Finally, the evidence would not have been admissible in the first place. Exhibit A is a hearsay report, made twenty months after appellant's trial by certain officers of the Los Angeles Police Department. The report contains statements as to the reputation of the witness sought to be impeached which amount to nothing other than hearsay and opinion. Therefore, quite aside from any objections as to relevancy, Exhibit A would be inadmissible either under the common-law exception to the hearsay rule or under the Federal Shop Book Rule codified in 28 U.S.C. § 1732. Olender v. United States, 9 Cir., 1954, 210 F.2d 795, 801; Gencarella v. Fyfe, 1 Cir., 1948, 171 F.2d 419, 420. Exhibit B only purports to show that eighteen months after appellant's trial the witness in question was arrested for a narcotics violation. Evidence of acts of misconduct or of arrests which do not result in a conviction are inadmissible to impeach a witness. Homan v. United States, 8 Cir., 1960, 279 F.2d 767, 771, certiorari denied 1960, 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88; Beasley v. United States, 1954, 94 U.S.App.D.C. 406, 218 F.2d 366, 368, certiorari denied 1955, 349 U.S. 907, 75 S.Ct. 584, 99 L.Ed. 1243. Recital of

these facts renders inapposite the case of United States v. Senft, D.C.E.D.N.Y., 1921, 274 F. 629.

After careful study of the entire record, we are convinced that there was no error. The judgment of conviction is affirmed.