**Albert L. MALONEY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 2335.**

United States District Court

D. Hawaii.

Sept. 24, 1965.

Blissard & Conklin, Honolulu, Hawaii, of counsel, by Daral G. Conklin, Honolulu, Hawaii, for plaintiff.

Herman T. F. Lum, U. S. Dist. Atty., by James Ventura, Asst. U. S. Atty., Honolulu, Hawaii, for defendant.

TAVARES, District Judge.

This is a negligence action brought by Robert L. Maloney, plaintiff, against the United States of America, defendant, under the Tort Claims Act, arising out of a rear-end collision on Nimitz Highway in Honolulu on September 3, 1964, between a truck owned by the United States and operated by a United States Navy em-

ployee, and a Plymouth Valiant Sedan owned and operated by the plaintiff.

The following are undisputed facts shown by the evidence. Plaintiff's vehicle, traveling in an Ewa or westerly direction on Nimitz Highway, came to a stop behind a government-owned sedan (not involved in this litigation), both vehicles having stopped properly to yield the right-of-way to other vehicles entering the highway ahead of them. While plaintiff's vehicle was at a dead stop, the government truck operated by a Navy man in uniform acting within the scope of his governmental employment, crashed into the rear end of plaintiff's vehicle.

The collision was clearly caused by the negligent operation of the truck by the defendant's employee. The testimony of the plaintiff himself (exclusive of that of the police officer hereinafter stricken) is undisputed and indicates that the defendant's vehicle was traveling at a sufficient rate of speed so that it caused a very heavy impact on the back of his automobile, forcing his automobile forward into the rear end of the sedan stopped in front of him, with such violence that, not only was the rear end of the plaintiff's sedan extensively damaged, but the front of his car was smashed sufficiently to damage the radiator so that it leaked, and to damage the engine so that it would not start, and the total impact was heavy enough to bend the body of the car to such an extent that one door would not open. This Court having a general knowledge of the sturdiness with which modern American cars are built, believes that the amount of the admitted damage to the car, $520.26, as further described by the plaintiff, was sufficient to indicate a very heavy impact. Fortunately, the plaintiff, through his rear vision mirror, saw the truck behind approaching and realized it was going to strike his vehicle and therefore braced himself as well as he could, holding on to the steering wheel and bracing his feet, and thereby avoided what this Court believes would otherwise have caused a much more serious injury to his neck, if not to other portions of his body.

However, the impact was sufficient to throw plaintiff forward violently and then backward and sideways onto the floor of the car, in such manner that his right knee was injured by striking against the dashboard, and he was badly shaken up.

This plaintiff, who is of a rather heavy and muscular build, seemed more concerned about possible injury to the people in the car in front of him than his own injuries, and got out to investigate. Aside from the knee injury, which caused him some pain that day and the next, he apparently did not realize that he was otherwise injured, but some time from three to five days afterwards he began to suffer from symptoms which he felt indicated that his neck might have been injured in the accident. Thereupon, indicating, in this Court's view, a good-faith attitude, he went to a large and highly reputable clinic in the city and was examined by a specialist, Dr. Strode, who was a surgeon, who turned him over to another specialist, Dr. Lowrey, who was a specialist in neurological surgery.

Without going into the details of the symptoms and treatment, it suffices to say that Dr. Lowrey treated plaintiff for a strained neck, which the government counsel chose to designate by the more popular name of "whiplash" injury, Dr. Lowrey characterising it as a moderately severe, and not a minor, neck sprain injury.

The Court is convinced, as both medical experts testified, that this plaintiff was not and is not malingering, and that the history which he gave to the doctors who examined him and the testimony which he gave in this court were frank and honest. If there was any exaggeration at any time by this witness prior to the trial in statements he may have made as to the amount of his damages, there was no exaggeration, in the Court's view, of his medical history or symptoms given by him at this trial or previously to the doctors, and the Court therefore believes that whatever conclusions were drawn by the doctors, based on plaintiff's statements of his medical history and

his symptoms, were based on reasonably sound and accurate historical and other facts, including the subjective symptoms.

 It is unfortunate that neither of the two medical men (one of them being the expert who had been consulted before the trial by the government, but not called as its witness) could offer with any reasonable degree of medical certainty an estimate as to the time in the future during which the plaintiff's condition might reasonably be expected to persist. Under the circumstances, this Court, taking judicial notice of the fact that people as they get older (and this plaintiff was fifty-seven years old) generally do not heal as quickly or perhaps as completely as younger people, this Court believes that the condition could reasonably be expected to persist for at least another year. Since no testimony was given as to any degree of permanent disability claimed to be caused by this injury, the Court can make no award for any permanent disability.

In this connection the Court has duly considered the fact that this witness had preexisting injuries and arthritic conditions of his neck and spine, which were not caused by the accident. But this Court is convinced from the testimony of the plaintiff and the two medical experts who testified for plaintiff, that there was a substantial aggravation of the preexisting condition by the injury caused by the accident of September 3, 1964, and that plaintiff has suffered some substantial pain and discomfort and loss of ability to earn at his full potential, due to this accident. The selling game does call for the exercise of one's best powers of persuasion and personality, and this Court is convinced that to some extent this plaintiff was hampered and his powers of salesmanship and persuasion dampened and reduced somewhat by the conditions produced by the injury, including his excessive nervousness, irritability, etc., to which he testified.

 It has been stipulated that the plaintiff's reasonable medical expenses to date were $403.45, and that he incurred reasonable automobile repair expenses of $520.26. These are allowed as special damages.

From all of the testimony the Court believes and finds that the plaintiff's earning capacity was reduced since the accident to a point equivalent to $2,500.00 for the first year following the accident, and $1,500.00 for the succeeding year during which the conditions may be expected to persist as above held. The Court believes, and finds, that, even if the detrimental conditions persist after another year from the present, plaintiff will, by that time have sufficiently adjusted so as to compensate, so-to-speak, for the handicap and achieve fully his former capacity to sell.

In addition, for the pain and suffering caused by the injury, which was substantial, although not continuous, the Court believes and finds that the amount of $2,000.00 to date is reasonable. An additional $500.00 is awarded for future pain and suffering during the succeeding twelve months.

These damages add up to $7,423.71.

Motions to strike the testimony of the police officer Richard Lovell were made by the defendant on the ground that his testimony, being based solely upon a certain written report of the Honolulu Police Department, was incompetent, and inadmissible. This officer testified that he had no present independent recollection of the accident, although he had investigated it and prepared a diagram of the location and situation as he found it to be from his investigation and from the admissions of the parties at the scene. The testimony of this officer indicated that at the time of the investigation he asked questions of the drivers of the two cars and filled in the blanks of a standard form of report furnished by his Department, with notes made by him, and that thereafter on the same day he returned to the police station and dictated to a central recording system furnished in the usual course of the business of that Department, statements to be filled in by stenographers employed by the Police Department in each of the blanks of the form which he had roughly filled

in. This Court feels that from all the testimony of this witness it can properly be inferred and found that this police officer dictated correct information, partially from his rough notes and partially from memory, into this recording device, and that this information which was later transcribed in the official report filed with the Department as his official report of the accident.

█ It could be strongly argued that we could reasonably presume that the police officer's statements were correctly transcribed in the proper blanks by the secretarial employees of the Police Department. However, it appears from the officer's testimony that he did not, within a reasonable time after the accident, check the statement as finally typed by others and compare it with his notes and recollection for accuracy, and that, in fact, he did not see the completed report until the day before he testified; that he brought a copy of the transcribed report with him and that his entire testimony was based on the report; that the report induced no refreshing of his recollection; and that he still had no independent recollection of the facts after reading the report. The only portion of the report sufficiently authenticated was the diagram drawn and signed by the police officer and identified by him as such. In the light of all these weaknesses, this Court must and does reluctantly order all of the testimony of this officer to be stricken, except that based on the diagram signed by him. See Ramirez v. United States, (9 Cir. 1961), 294 F.2d 277, 284:

"* * * (the police report) would be inadmissible either under the common-law exception to the hearsay rule or under the Federal Shop Book Rule codified in 28 U.S.C. § 1732. Olender v. United States, 9

Cir., 1954, 210 F.2d 795, 801; Gencarella v. Fyfe, 1 Cir., 1948, 171 F.2d 419, 420."

On the basis of the authorities there seems to the Court to be not quite a sufficient foundation to render the officer's testimony admissible. Had the witness within a reasonable time after the transcription of his report by others, checked it and found it to be accurate, a different conclusion might be called for. Compare Rule 504, American Law Institute, Model Code of Evidence, and Gencarella v. Fyfe, 1 Cir. 1948, 171 F.2d 419, 421, in which the court said:

"* * * given the proper foundation, the (entries in the report made on the reporting officer's personal knowledge) might even be put in evidence as an exhibit as a record of the officer's past recollection * * *"

However, he did not check it until at a time when his independent recollection no longer would enable him to determine its accuracy or inaccuracy, and at a time when apparently his notes had been destroyed or were not available, and no attempt was made to have the stenographer who transcribed and signed the transcription of this report testify as to the accuracy of the transcription, nor was any other testimony produced to further authenticate the statement as being an accurate transcription of what the police officer had given to the recording machine.

Plaintiff will be allowed five days in which to prepare proposed findings of fact and conclusions of law in accordance with the general conclusions set forth in this decision; if those proposed findings and conclusions are not approved by the defendant, the Court will hear defendant's objections thereto within five days thereafter, or such additional time as may be allowed by the Court.