UNITED STATES of America and L. J. Marberry, Revenue Agent, Petitioners-Appellees,

v.

Robert J. AWERKAMP, Respondent-Appellant.

No. 73-2051.

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1974.

Decided June 3, 1974.

Robert J. Awerkamp, for respondent-appellant.

Scott P. Crampton, Asst. Atty. Gen., Michael J. Roach, Atty., U. S. Dept. of Justice, Tax Div., Washington, D. C.,

Donald B. Mackay, U. S. Atty., Springfield, Ill., for petitioners-appellees.

Before PELL and SPRECHER, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

SPRECHER, Circuit Judge.

Respondent, Robert J. Awerkamp, appeals from an order directing him to appear before a proper officer of the Internal Revenue Service "for the purpose of giving testimony concerning his responsibility to prepare and file Federal Income Tax Returns for the periods ending December 31, 1970 and December 31, 1971." We affirm.

## I

Petitioner, revenue officer L. J. Marberry of the Collection Division of the Internal Revenue Service, was assigned to conduct an investigation with respect to the preparation and filing of delinquent federal income tax returns. As a part of this investigation, a summons was issued by Marberry on January 23, 1973, directing respondent Robert J. Awerkamp to appear before him on February 5, 1973. This summons, personally served on Awerkamp, further directed him "to give testimony relating to [his] tax liability or the collection of [his] tax liability" and to bring with him:

> [a]ll documents and records in [his] possession or control which are necessary to enable a representative of the Internal Revenue Service to complete a federal income tax return for the taxable years 1970 and 1971 . . . ; a blank federal income tax return is attached hereto to guide you in your production of the necessary documents and records.[1]

Awerkamp did not appear before Marberry on the appointed date.

By letter dated March 9, 1973, the regional counsel for the IRS informed Awerkamp that he should appear before Marberry on March 30, 1973 with "all documents and records specified in the summons" in order to avoid legal proceedings which could be brought against him for continued noncompliance with the summons. On March 30, Awerkamp hand delivered to Marberry a copy of a letter dated March 27, 1973, addressed to the IRS regional counsel, stating that:

> [t]he "summons" requests my records in violation of my God given rights as guaranteed by at least the 4th, 5th, 6th, 7th and 9th Amendments to the United States Constitution. The summons even fails to cite the "Miranda warning". Naturally I ignored his "Summons" as I'm sure you would.
>
> \* \* \* \* \* \*
>
> Should you still wish to discuss any of my alleged records please send me a written promise of immunity from prosecution, penalty or punishment of any kind or form.

Awerkamp did not testify or submit any documents or records.

1. 26 U.S.C. § 7602 provides the following:

    For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect to any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

    (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

    (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

    (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry. *See also* Treas.Reg. § 301.7602–1.

On May 7, 1973, the United States and Revenue Officer Marberry petitioned the district court for enforcement of the summons, 26 U.S.C. §§ 7402(b), 7604(a).[2] The petition prayed, *inter alia*, for an order directing Awerkamp to show cause "why he should not comply with and obey the aforementioned summons in each and every requirement thereto." The district court issued the order to show cause pursuant to which a hearing was held on July 2, 1973. At the hearing, Awerkamp appearing *pro se* reiterated the constitutional arguments raised in his pleadings; to wit, that 26 U.S.C. §§ 7602, 7402(a), and 7604(a) were violative of the 4th, 5th, and 13th Amendments. Awerkamp did not present any evidence or call any witness at the hearing.

On August 9, 1973, the district court entered an order granting the relief requested by petitioners in the exact language employed in the petition: that respondent "appear for the purpose of giving testimony concerning his responsibility to prepare and file Federal Income Tax Returns . . . ."

## II

In proceedings to enforce a summons, the Supreme Court has enunciated the following guidelines for the Court's inquiry:

> It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation. The burden of showing an abuse of the court's process is on the taxpayer . . . .

United States v. Powell, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964).

■ Respondent argues that the summons is being used for an improper purpose because the information being sought will be used to recommend a criminal prosecution for a violation of 26 U.S.C. § 7203.[3] In Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the Supreme Court held that "Congress clearly has authorized the use of the summons in investigating what may prove to be criminal conduct" up until the point "where the sole objective of the investigation is to obtain evidence for use in a criminal prosecution . . . ." This point is reached when a recommendation for criminal prosecution is made. 400 U.S. at 531–536. *Accord*, United States v. Moriarity, 7 Cir., 435 F.2d 347, 349–350. Thus in *Donaldson* where the summons was issued by agents of the IRS Intelligence Division which is responsible for enforcement of the criminal provisions of the Internal Revenue Code, 26 C.F.R. § 601.107 (1973), the Supreme Court held that the summons was not outside the scope of section 7602.

2. Sec. 7402. Jurisdiction of district courts.
(b) To Enforce Summons.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.
Sec. 7604. Enforcement of summons.
(a) Jurisdiction of district court.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

3. 26 U.S.C. § 7203 makes it a misdemeanor for "[a]ny person required under this title . . . to make a return . . . [to] willfully fails to . . . make such return . . . ."

Any other holding, of course, would thwart and defeat the appropriate investigatory powers that the Congress has placed in "the Secretary or his delegate." . . . Donaldson was not under indictment and, indeed, no recommendation had been made for his prosecution. That he might be indicted and prosecuted was only a possibility, no more and no less in his case than in the case of any other taxpayer whose income tax return is undergoing audit. Prosecution will necessarily depend on the result of that audit and on what the examination and investigation reveal.

\* \* \* \* \* \*

There is no statutory suggestion for any meaningful line of distinction, for civil as compared with criminal purposes, at the point of a special agent's appearance. See Mathis v. United States, 391 U.S. 1, 4 [88 S.Ct. 1503, 1504, 20 L.Ed.2d 381] (1968). To draw a line where a special agent appears would require the Service, in a situation of suspected but undetermined fraud, to forgo either the use of the summons or the potentiality of an ultimate recommendation for prosecution. We refuse to draw that line and thus to stultify enforcement of federal law. See United States v. Kordel, 397 U.S. 1, 11 [90 S.Ct. 763, 769, 25 L.Ed.2d 1] (1970.)

400 U.S. at 533–536.

▇ Here, the purpose of the summons was to gather information for the completion of tax returns for 1970 and 1971. The summons was issued by a revenue officer in the Collection Division. There is not the merest suspicion in the record that a recommendation for prosecution had been made. The existence of a possibility of criminal prosecution does not make the summons unenforceable. See United States v. Turner, 480 F.2d 272, 275 (7th Cir. 1973).

▇ Respondent further argues that the summons was unenforceable because it was issued for the improper purpose of ascertaining how much he earned and to take wealth earned by him in order to "give it to the enemies of our country or to those who will not work or even to those who cannot work." Respondent contends that the government does not have these powers because the populace does not have such rights to delegate. Respondent's argument insofar as it attacks the constitutionality of the taxing and spending powers is close to frivolous. See Daly v. United States, 393 F. 2d 873, 877 (8th Cir. 1968).

▇ Respondent next argues that the summons procedure of 26 U.S.C. § 7203 violates the Fifth Amendment protection against self-incrimination because the "administrative subpoena" is a device for compulsory disclosure. He further contends that by complying with the summons his freedom is under official restraint in an atmosphere of official coercion and that this is "custodial interrogation" to which the *Miranda* warning applies. First, we note that in this circuit "Miranda warnings must be given to the taxpayer by either the revenue agent or the special agent at the inception of the first contact with the taxpayer after the case has been transferred to the Intelligence Division." United States v. Dickerson, 413 F.2d 1111, 1116–1117 (7th Cir. 1969). There is no evidence in the record that the case had been referred to the IRS Intelligence Division. Secondly, it appears that respondent has confused the questions of when the Fifth Amendment can be invoked and how this may properly be accomplished. As the district judge explained to Awerkamp at the hearing, enforcement of the summons at this stage in the proceedings does not preclude the invocation of the Fifth Amendment privilege once respondent appears in compliance with the summons. As we interpret the proceedings below in terms of the questions passed upon, respondent was prohibited by the order from making a Fifth Amendment assertion *in limine*; he was not required to answer any particular question.

In responding to a summons, the individual summoned must present himself for questioning and "claim the constitutional privilege as particular questions are asked." In re Turner, 309 F.2d 69, 71 (2d Cir. 1962). *Accord,* United States v. Roundtree, 420 F.2d 845, 852 (5th Cir. 1969). *Cf.* United States v. Ellsworth, 460 F.2d 1246, 1248 (9th Cir. 1972). This manner of invoking the privilege enables the district judge in any subsequent proceeding to decide the merit of the claim of privilege. In Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), the Supreme Court in reversing a conviction for criminal contempt based on refusal to answer certain questions before a special federal grand jury stated:

> [T]his protection [from self-incrimination] must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. Mason v. United States, 244 U.S. 362, 365 [37 S.Ct. 621, 622, 61 L.Ed. 1198] (1917), and cases cited. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, Rogers v. United States, 340 U.S. 367 [71 S.Ct. 438, 95 L.Ed. 344] (1951), and to require him to answer if "it clearly appears to the court that he is mistaken." Temple v. Commonwealth, 75 Va. 892, 899 (1881).

341 U.S. at 486–487.

The same reasoning was employed in Sullivan v. United States, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927), where the Supreme Court held that the Fifth Amendment does not excuse a failure to file an income tax return. The Court reasoned that "[i]f the form of return provided called for answers that the defendant was privileged from making he could have raised the objection in the return, but could not on that account refuse to make any return at all." 274 U.S. at 263. While not deciding that a claim of privilege as to certain questions would constitute a valid defense for failure to answer on a tax return,[4] the Court indicated that a more narrow assertion of the privilege would have allowed the court to pass on the merit of the claim. "He could not draw a conjurer's circle around the whole matter by his own declaration that to write any word upon the government blank would bring him into danger of the law." 274 U.S. at 264. Thus in Albertson v. SACB, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965), the Supreme Court stated that the *Sullivan* holding was "based on the view, *first,* that a self-incrimination claim against every question on the tax return, or based on the mere submission of the return, would be virtually frivolous, and *second,* that to honor the claim of privilege not asserted at the time the return was due would make the taxpayer rather than a tribunal the final arbiter of the merits of the claim. 382 U.S. at 79.

Respondent further asserts that his Fourth and Thirteenth Amendment rights will be violated by enforcement of the summons provision requesting the gathering together and presentation of books and records. Inasmuch as the district court order only requires respondent to "appear for the purpose of giving testimony," this question is not properly before us.[5]

Finally, respondent Awerkamp argues that the summons should not be enforced because he was not offered any mileage and witness fees as provided by 5 U.S.C. § 503(b). *See* Roberts v. United States, 397 F.2d 968, 970–971 (5th Cir. 1968). We note that 28 U.S.C. § 1825 states that "[f]ees and mileage

---

4. *See* California v. Byers, 402 U.S. 424, 434 n. 6, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971).

5. The order adopts the language employed in petitioners' prayer for relief and, in their brief, petitioners concede that the order does not "direct the taxpayer to produce any specific records for examination . . . ." Brief for Petitioners at 12.

need not be tendered to the witness upon service of a subpena issued in behalf of the United States or an officer or agency thereof . . . . " When respondent appears before the revenue officer, he may request reimbursement. In any event, a claim for witness fees and mileage does not insulate respondent from process.[6]

Affirmed.

6. During oral argument, Awerkamp stated that subsequent to the proceedings in the district court he filed tax returns for the years in question listing only his name and address. This fact does not affect our disposition of the case.