UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles D. McCORKLE, Jr.,
Defendant-Appellant.

No. 73–1084.

United States Court of Appeals,
Seventh Circuit.

Argued en banc Dec. 10, 1974.

Decided Feb. 24, 1975.

Rehearing and Rehearing En Banc
Denied April 1, 1975.

Charles R. Purcell, William A. Barnett, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, FAIRCHILD, CUMMINGS, PELL, STEVENS, SPRECHER and TONE, Circuit Judges.

CASTLE, Senior Circuit Judge.

Defendant Charles D. McCorkle, Jr. was convicted by a jury of willfully failing to file federal income tax returns for 1965, 1966 and 1967 in violation of 26 U.S.C. § 7203.[1] The sole issue before the jury was whether McCorkle's failure to file was willful.

On appeal, a panel of this court reversed McCorkle's conviction, holding that the trial court incorrectly instructed the jury on the issue of willfulness and erred in limiting McCorkle's cross-examination of two Internal Revenue Service agents. Subsequently, a majority of the active judges on this court voted to rehear the case en banc. After carefully reviewing McCorkle's contentions, we affirm his conviction.

I.

McCorkle argues that in order to find that he willfully failed to file his tax returns, United States v. Bishop, 412 U.S. 346, 361, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973) requires an intent to defraud

---

1. That section provides:

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

the Government or other similar "bad purpose or evil motive." He asserts, therefore, that the trial court's instructions [2] directing the jury that it need not be concerned with whether the defendant intended to evade taxes or defraud the Government precluded the jury from determining that his failure to file was not willful.

Prior to the Supreme Court's decision in *Bishop,* this court was confronted with the same argument as is presented here in United States v. Matosky, 421 F.2d 410 (7th Cir.), cert. denied 398 U.S. 904, 90 S.Ct. 1691, 26 L.Ed.2d 62 (1970). In finding no error in the instructions on willfulness in that case, we held that:

> [T]he defendant's motive need not be restricted to an intent to defraud the Government in order for there to be a violation of § 7203. Rather, the Government has proven its case when it has established beyond a reasonable doubt: that the defendant was required to file a return; that he knew that he was so required; and that he willfully or purposefully, as distin-

guished from inadvertently, negligently, or mistakenly, failed to file such a return. His reasons for failing to so file are irrelevant under § 7203, so long as the above facts are shown. *Id.* at 413 (Footnote omitted).

Thus, *Matosky* established that in order for the violation to be willful, the government need only prove a deliberate intention not to file returns which the defendant knew should be filed. Although *Bishop* disapproved our statement that the meaning of willfulness under the tax felony statutes would differ from its meaning under such tax misdemeanor statutes as § 7203, we believe the definition of willfulness enunciated in *Matosky* complies with the uniform meaning adopted by the Court in *Bishop.*

In *Bishop,* the Court held that "willfully" has the same meaning in both tax misdemeanor and tax felony statutes. The Court stated that the word "willfully" in these statutes "generally connotes a voluntary, intentional violation of a known legal duty," 412 U.S. at 360, 93 S.Ct. at 2017, and went on to rule that

2. The instructions on the element of willfulness were as follows:

You are further instructed that the wilfulness which the Government must prove beyond a reasonable doubt does not require the Government to prove that the defendant had a purpose to evade a tax or to defraud the Government. For example, one might honestly plan and intend to pay the tax revenues due the Government at some future time subsequent to the required filing date and, hence, have no intent to defraud the Government of taxes, but if one intentionally fails to file a return at the time when required by the law with full knowledge that he was required to do so, and it is immaterial whether or not at that time he could or could not pay the tax that was due, I instruct you that this is all that is necessary for the Government to prove to establish the offense of a willful failure to file the tax returns. In other words, lady and gentlemen, the intent to report income and pay the tax sometime in the future is not a defense to the charge of willfully failing to file tax returns. The willful failure to make a return is made an offense under the laws of the United States, without regard to the existence of a tax liability and punctuality is important to the fiscal system and sanctions are imposed by the law to assure punctual as well as faithful performance of one's duties.

Now, the word "wilful" has a number of different meanings depending upon the context in which it is used. As used in this statute—and I am talking now about United States Code, Title 26, Section 7203, the word "wilful" means voluntary, purposeful, deliberate and intentional, as distinguished from accidental, inadvertent or negligent.

The failure to act is willfully done if done voluntarily and purposefully and with a specific intent to fail to do what the law requires to be done; that is to say, with a bad purpose to disobey and disregard the law. I charge you that the only bad purpose necessary for the Government to prove in this case is the deliberate intention not to file returns, which the defendant knew he was required to file at the time that he was required to file them.

The law does require proof of specific intent before the defendant can be convicted. Now, "specific intent" means more than general intent to commit the act; to establish specific intent the Government must prove, beyond a reasonable doubt, that Charles McCorkle knowingly did an act which the law forbids, purposefully intending to violate the law and knowing that such act would violate the law. Such intent may be determined by you from all of the evidence which has been submitted in this case.

"we therefore shall continue to require, in both tax felonies and tax misdemeanors that must be done 'willfully,' the bad purpose or evil motive described in [United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933)]." 412 U.S. at 361, 93 S.Ct. at 2017. Contrary to the defendant's contentions, we believe that the Court employed the terms "bad purpose" and "evil motive" as a convenient method of referring to the longer definition of "willfully" as a "voluntary, intentional violation of a known legal duty," and not as engrafting an intent to defraud requirement or other similar evil purpose on that definition. Examination of the bad purpose or evil motive described in *Murdock* supports this conclusion.

The defendant in *Murdock* refused to supply information concerning his tax liability to federal revenue officials, fearing that such information would lead to prosecution under state law. Subsequently, the defendant was prosecuted for willfully failing to supply information under a statutory predecessor to § 7203. His defense was that he relied in good faith on his privilege against self-incrimination, and that therefore his refusal to supply the information requested could not be termed "willful." The trial court, in its charge to the jury, stated that it believed the defendant to be guilty.

The Supreme Court, in affirming the appellate court's reversal of the defendant's conviction, held that the trial court judge had improperly expressed his opinion that the defendant was guilty. The Court arrived at this result because it first concluded that to find that the defendant willfully violated the statute, it must be found that the defendant acted not only voluntarily, but also with "bad faith or evil intent." 290 U.S. at 398, 54 S.Ct. 223. Then, because it was not undisputed or admitted that "defendant's assertion of the privilege was so unreasonable and ill founded as to exhibit bad

faith and establish willful wrongdoing," 290 U.S. at 396, 54 S.Ct. at 226, the Court found that the trial court's comment had invaded the province of the jury. The implication of *Murdock,* therefore, is that had it been undisputed that the defendant knew that his reliance on the privilege was invalid, the trial court's comment would not have constituted error, and the conviction, without any further showing by the government, would have been upheld. Thus, the evil motive described in *Murdock* that would have satisfied the requirement of willfulness would have been the defendant's voluntary refusal to supply information, knowing that such refusal was wrongful.

Cases decided after *Bishop* have also interpreted that decision to mean that willfulness only requires an intentional violation of a known legal duty. United States v. Hawk, 497 F.2d 365 (9th Cir.), cert. denied, 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974); United States v. Klee, 494 F.2d 394 (9th Cir.), cert. denied, 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974); United States v. Smith, 493 F.2d 906 (5th Cir. 1974) (dictum). Thus, in United States v. Hawk, *supra,* at 368, the court found that the thrust of *Murdock* was that the requirement of willfulness is satisfied by proof that the act was done voluntarily and with knowledge that it was wrongful, and concluded that the terms bad purpose and evil motive are merely "convenient shorthand expression[s]" for the required elements of proof. Consequently, we reject the argument that intent to defraud is essential to prove that a violation is willful, and conclude that *Bishop* did not alter the definition of willful as set forth in *Matosky.*

Examination of the instructions in this case shows that in three instances the trial court correctly charged the jury that willfulness requires both an intentional failure to file, and knowledge by the defendant that he was under a legal obligation to do so.[3] The defendant's

3. The instructions provided:

1) . . . if one intentionally fails to file a return at the time when required by law with

full knowledge that he was required to do so . . . is all that is necessary for the Government to prove . . . ..

contention that other statements in the court's charge might have misled the jury is without merit when the statements are considered in context and in light of the proper instructions that were given.

■ Finally, McCorkle argues that the instructions had the effect of eliminating justifiable excuse as a consideration in resolving the issue of willfulness. However, as we noted in *Matosky, supra,* 421 F.2d at 413, only an inadvertent failure to file or "a bona fide misunderstanding as to [defendant's] . . . duty to make a return" would constitute "justifiable excuses." Since the instructions required the jury to find an intentional violation of a known legal duty, it would have been essential for the jury to conclude that McCorkle's conduct was unjustified. United States v. Kaczmarek, 490 F.2d 1031 (7th Cir. 1974). We find the trial court's instructions to be proper.

## II.

McCorkle next claims that the trial court erroneously limited his cross-examination of two Internal Revenue Service agents by excluding testimony concerning portions of conversations between McCorkle and the two agents after admitting testimony concerning other parts of the conversations during direct examination of the agents. The officers testified on direct examination that McCorkle admitted his failure to file his federal tax returns for the decade 1957–1967 and that he also recalled being advised that he could file his returns without payment or with only partial payment of the tax due. McCorkle further admitted to the agents that copies of purported tax returns for 1959–1960 furnished to a savings and loan association were fictitious, and that amounts representing es-

timated tax payments supplied to his accountant to present the appearance of diligent tax filing, were also fictitious.

At trial, McCorkle offered to prove that he also told the agents during these conversations that (1) he failed to file because he did not have the money to pay the tax due; (2) he did not file because of the possible criminal consequences arising from his failure to file earlier returns; (3) he did not file because he had been contemplating suicide; (4) he did not file because he feared the government, on learning of his tax liability, would place liens on his property and jeopardize his business; (5) he was involved in a divorce suit with his wife at the time of the investigation and the returns would have been voluntarily filed when the divorce was final; (6) he timely filed all employer's returns; (7) he offered to cooperate with the agents; (8) he offered to pay his civil liabilities; and (9) he kept accurate records of supplemental income, which would have been properly included on his returns.

■ The statements of McCorkle testified to by the revenue agents on direct examination are hearsay, but are receivable against him as admissions of a party opponent. IV J. Wigmore, Evidence § 1048 (Chadbourn rev. 1972). The hearsay statements which McCorkle sought to bring out on cross-examination, however, are properly characterized as self-serving, and are generally not admissible. IV J. Wigmore, *supra,* at 5; *see* United States v. Seyfried, 435 F.2d 696 (7th Cir.), cert. denied 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 654 (1971). Nonetheless, McCorkle argues that the doctrine of verbal completeness permits him to bring out the whole of the conversations.

■ The right of a party to offer into evidence the remaining portion of an ut-

2) The failure to act is willfully done if done voluntarily and purposefully and with a specific intent to fail to do what the law requires to be done; that is to say, with a bad purpose to disobey and disregard the law. I charge you that the only bad purpose necessary for the Government to prove in this case is the deliberate intention not to file returns, which

the defendant knew he was required to file at the time that he was required to file them.
3) . . . the Government must prove beyond a reasonable doubt that Charles McCorkle knowingly did an act which the law forbids, purposefully intending to violate the law and knowing that such act would violate the law.

terance is, however, not absolute. Wigmore lists two corollaries which limit the exercise of the doctrine of verbal completeness:

> (a) No utterance irrelevant to the issue is receivable;
>
> (b) No more of the remainder of the utterance than concerns the same subject, and is explanatory of the first part, is receivable;
>
> . . . VII J. Wigmore, Evidence § 2113, at 524 (3d ed. 1940) (Emphasis and citations omitted)[4].

Applying these corollaries, we find that the proffered testimony was properly excluded.

■ First, since we have ruled that proof of intent to defraud the government is not required to establish the willfulness necessary for conviction under § 7203, it is apparent that essentially all of the testimony which McCorkle sought to introduce was of no relevance to whether McCorkle intentionally failed to file returns knowing that he was legally obliged to do so. The only evidence which might have been relevant was the declaration by McCorkle that he did not have the funds to pay the tax due. That only would have been the case, however, if McCorkle believed that the returns could not be filed without a remittance, but the evidence was undisputed that McCorkle's attorney advised him as early as 1963 that he could file returns without making tax payments at the same time.

Second, the doctrine of verbal completeness is not applicable here because McCorkle's self-serving declarations do not qualify or explain his admissions. McCorkle contends that the proffered testimony would fully explain his state of mind at the time the returns were due. However, while the excluded testimony might be probative of McCorkle's general state of mind, it does not explain or qualify the mental state relevant for conviction under § 7203. Thus, the conversations at issue resemble the report in Gencarella v. Fyfe, 171 F.2d 419, 422 (1st Cir. 1948), where the court, in admitting into evidence only portions of a police report, dismissed an argument based on the doctrine of verbal completeness, observing that "the admissible and inadmissible parts of the report were readily severable from one another, and the separate parts have no bearing to explain or qualify each other." *See also* United States v. Seyfried, *supra*, 435 F.2d at 698. Accordingly, we find no error in the trial court's exclusion of the proffered testimony.[5]

### III.

The defendant argues that the trial court erred by not suppressing his admission that he failed to file tax returns for 1966, 1967 and 1968 made at a June 20, 1969 meeting with revenue agent. Joseph Powers, who was assigned to the Collection Division of the Internal Revenue Service. He asserts that IRS News Release No. 897,[6] issued October 3, 1967,

---

**4.** Wigmore also lists a third corollary which pertains to how the testimony is to be treated if admitted.

**5.** It is also claimed that the trial court improperly excluded the results of a polygraph examination of the defendant. As was the case with the testimony sought to be elicited on cross-examination, however, the offer of proof clearly demonstrates that the results of the test were irrelevant to a determination of the defendant's willfulness.

At oral argument, the defendant strenuously urged that the jury should be permitted to consider these extraneous matters in order to permit the jury to exercise its power as "conscience of the community," and to acquit the defendant even though there may be clear

evidence of a criminal violation. The jury, of course, is free to exercise this prerogative, but only on facts relevant to the legal issues involved. *See* United States v. Burkhart, 501 F.2d 993, 996–997 (6th Cir. 1974).

**6.** That release provides in part:

> In response to a number of inquiries the Internal Revenue Service today described its procedures for protecting the Constitutional rights of persons suspected of criminal tax fraud, during all phases of its investigations.
>
> Investigation of suspected criminal tax fraud is conducted by Special Agents of the IRS Intelligence Division. This function differs from the work of Revenue Agents

which requires agents of the IRS Intelligence Division to warn taxpayers of their constitutional rights, is applicable to Powers, and that Powers' failure to comply with the procedures provided for in the Release mandates suppression of his admission.[7]

Inquiry into the tax matters of the defendant began with an anonymous telephone call received at the Information Desk of the Intelligence Division of the IRS, alleging that McCorkle had not filed income tax returns for the years 1966–1968. The information was evaluated as having "no criminal potential," and the matter was referred to the Collection Division, which in turn assigned the case to agent Powers. Prior to meeting McCorkle, Powers knew that a routine check had disclosed that the files of the Collection Division did not contain . McCorkle's returns. Powers then met with McCorkle on June 20, 1969, identified himself as a revenue officer, but did not warn the defendant of his constitutional rights. Later, McCorkle made his admission. After a second meeting at which McCorkle and his attorney were present, the matter was referred back to the Intelligence Division for criminal investigation.

■ The defendant argues that although the Collection Division conducts civil investigations, under the circumstances of this case Powers was acting as an agent of the Intelligence Division conducting a criminal inquiry. The defendant concedes that United States v.

Dickerson, 413 F.2d 1111, 1117 (7th Cir. 1969), in which we prospectively required revenue agents to give *Miranda* warnings at the inception of the first contact with taxpayers after the case has been transferred to the Intelligence Division, is not applicable here because that case was decided after the meeting between Powers and McCorkle occurred. He urges, however, that even though *Dickerson* does not apply, Powers' failure to follow the IRS Release requires suppression of his admission. *Compare* United States v. Leahey, 434 F.2d 7 (1st Cir. 1970) and United States v. Heffner, 420 F.2d 809 (4th Cir. 1969) *with* United States v. Lehman, 468 F.2d 93, 104 (7th Cir.), cert. denied 409 U.S. 967, 93 S.Ct. 273, 34 L.Ed.2d 232 (1972). Assuming without deciding that a failure to follow the procedure outlined in the Release would have that consequence, the argument cannot succeed because the Release applies only to "[i]nvestigation of suspected criminal tax fraud . . . conducted by Special Agents of the IRS Intelligence Division," and thus, where the investigation is not criminal in nature, the Release, like the *Dickerson* rule (413 F.2d at 1116 n. 10) does not require warnings.

■ The facts demonstrate that Powers was not conducting a criminal investigation in disguise. Powers testified that his duties as a revenue officer are to collect delinquent taxes and to pick up delinquent returns. Knowledge that McCorkle's returns were not in the Col-

and Tax Technicians who examine returns to determine the correct tax liability.

Instructions issued to IRS Special Agents go beyond most legal requirements to assure that persons are advised of their Constitutional rights.

On initial contact with a taxpayer, IRS Special Agents are instructed to produce their credentials and state: "As a special agent, I have the function of investigating the possibility of criminal tax fraud."

If the potential criminal aspects of the matter are not resolved by preliminary inquiries and further investigation becomes necessary, the Special Agent is required to advise the taxpayer of his Constitutional rights to remain silent and to retain counsel.

IRS said although many Special Agents had in the past advised persons, not in custody, of their privilege to remain silent and retain counsel, the recently adopted procedures insure uniformity in protecting the Constitutional rights of all persons. *Reprinted in* 7 CCH 1967 Stand.Fed.Tax.Rep. ¶ 6832.

7. The IRS Intelligence Division enforces the Criminal provisions of the Internal Revenue Code, while the Collection Division conducts civil actions to enforce collection of taxes. *See* 9 J. Mertens, Law of Federal Income Taxation §§ 49.74–49.76 (rev. ed. 1971).

lection Division files would be essential to those duties, and does not indicate that he suspected criminal activity. The fact that the tip which led to the investigation originated in the Intelligence Division does not make Powers an agent of that Division, especially since the information was evaluated as having no criminal potential. United States v. Robson, 477 F.2d 13, 17 (9th Cir. 1973). Once the matter was referred to the Collection Division, the Intelligence Division relinquished all control over it, and Powers' investigation was completely independent. The existence of the possibility of criminal prosecution does not turn Powers' inquiry into one to which the procedures required by the IRS News Release applies. *See* United States v. Awerkamp, 497 F.2d 832, 835 (7th Cir. 1974). Accordingly, we find that the trial court properly denied McCorkle's motion to suppress.

### IV.

Lastly, McCorkle asserts that the trial court erred by permitting voir dire, in the absence of the jury, as to the relevancy of the testimony of his witness James Donnelly, and by subsequently concluding that the testimony was irrelevant and that the witness should not testify. In United States v. Dellinger, 472 F.2d 340, 408–409 (7th Cir. 1972), cert. denied 410 U.S. 970, 93 S.Ct. 1453, 35 L.Ed.2d 706 (1973), we stated that departure from the normal procedure of allowing the witness to be questioned in ordinary course in the presence of the jury "should be directed only when an intention to engage in prejudicial conduct is clearly shown." The defendant, however, did not object to the procedure employed by the trial court, and the testimony elicited on voir dire was clearly not relevant. Consequently, there was at most harmless error. Fed.R.Crim.P. 52(a).

The judgment of the district court is affirmed.

Affirmed.

SWYGERT, Circuit Judge (concurring).

Reconsideration of the issue of wilfulness in light of the petition for rehearing, oral argument, a re-examination of the record, and Judge Castle's persuasive opinion has led me to the conclusion that my original view, expressed in the prior opinion in this case, which I authored, was in error. I am willing to agree that the scienter requirement of the statute does not encompass specific intent to defraud the Government, although I do maintain that a purposeful, voluntary failure to file a return does in a conceptual sense contain the latent intent to defraud the Government by not reporting income on which a tax may be assessed. A review of the instructions to the jury in this case now convinces me that the element of wilfulness was properly covered by the district judge and that the conviction in this case must therefore be affirmed.