**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Musa "Moses" SWEISS,**
**Defendant-Appellant.**

**No. 85-2568.**

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1986.
Decided Sept. 5, 1986.

Ruben Castillo, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Raymond J. Smith, Burke & Smith, Chicago, Ill., for defendant-appellant.

Before CUMMINGS, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Musa "Moses" Sweiss was the manager and part owner of the "Super Low" grocery store in Chicago, Illinois. Sweiss was convicted of conspiring to destroy a competing grocery store and of attempting to obstruct the government's investigation of that crime. The plaintiff appeals the district court's refusal to allow the jury to hear the first of two tape-recorded conversations between the defendant and the main prosecution witness. After examining the transcript of the conversation we conclude that the conversation was admissible under the rule of completeness. However, because of a decision made by defendant's counsel, the admission was waived. We therefore affirm the district court's holding.

## I

Moses Sweiss was indicted in September, 1984, on charges that he conspired with Bassam Faraj to commit arson (Count I) and aided and abetted an attempted arson (Count II). Moses Sweiss was also indicted for assisting Bassam Faraj in his plans to flee the jurisdiction of the United States (Count III) and with attempting to persuade a grand jury witness to retract or change his testimony against Sweiss.

After a ten-day jury trial Sweiss was found guilty on all four counts. Sweiss filed a Motion for a New Trial asserting that the district court erred in excluding from evidence: (1) a tape-recording of a conversation between Sweiss and Faraj that were allegedly relevant and explanatory to prosecution proffered tapes of a conversation already admitted into evidence and, (2) testimony that was allegedly relevant and integral to Sweiss' defense. The motion was denied and the court sentenced Sweiss to concurrent three year sentences on Counts I, II and III, five years probation on Count IV and the court imposed a three thousand dollar fine.

Moses Sweiss' defense was that he was "framed" in order to "take the fall" for the true instigator of the conspiracy, Faraj's "millionaire Uncle," Michael Sweiss, who was the controlling partner of the Super Low grocery store that Moses Sweiss operated. This convoluted story began when Faraj was working as a butcher at the Super Low. Faraj asked a frequent customer by the name of William Franklin to "torch the One Stop" super market. That same day Franklin contacted the Chicago Police Department Bomb and Arson Hotline and told them that Faraj had offered him $1,500 to burn down the One Stop. Agents of the Department of Alcohol, Tobacco and Firearms ("ATF") outfitted Franklin with a hidden recording device that was then used to tape nine conversations that detailed Faraj's plans to destroy the One Stop. During Faraj's conversations with Franklin, Faraj never revealed the name of the person who had hired him, but referred to that person as "the man," "my uncle," and "one of my uncles." When Franklin met Faraj for one of their meetings to plan the bombing, they met at the Super Low. When Franklin walked into the store he saw Faraj speaking to Moses Sweiss. When Faraj met Franklin he said "Man, I was inside, you know, talking to the man."

Faraj was arrested on May 3, 1984 and after hearing the tape-recorded conversations between himself and Franklin, Faraj named Moses Sweiss as the person he was working for. Faraj remained in custody until several members of the Sweiss family, including Moses Sweiss, posted a $15,000 cash bond. Three months later Faraj called an ATF Agent and told him that he wanted to talk to the government about Moses Sweiss. Faraj then agreed to wear a hidden recording device and did secretly record two conversations that Moses Sweiss was involved in, one in August and the other in September of 1984. Faraj became a trial witness for the government.

The government introduced a transcript of the September conversation into evidence at Moses Sweiss' trial, but the district court refused to admit a transcript of the August conversation that was offered by the defense. Both conversations were in Arabic. Both parties stipulated to the

use of an English translation of the September conversation. During that conversation Faraj and Moses discussed how Faraj could flee to Mexico and how Faraj had been solicited to bomb the One Stop grocery store. While Sweiss did not say anything in the conversation that directly incriminated himself, the government successfully argued to the jury that his statements implicated him in the crime.

In his opening and rebuttal arguments the prosecutor stressed the importance of the September conversation. He told the jury that "the big evidence against Moses Sweiss is his own words on September tenth" and that that conversation showed (1) that Moses Sweiss had solicited Faraj to commit the arson; (2) that by implication Sweiss admitted that the solicitation conversation occurred; and (3) that because Sweiss knew the details of Faraj's plans to flee the country he was a participant in those plans.

The defense argues that the conversation recorded on August 14th shows that all three of these contentions are not true. First, the defense argues that when Faraj first told Sweiss during the August conversation that "everyone," including his "Lawyer and all the Arabs," were pressuring him to name Moses Sweiss as the one who solicited Faraj to commit the arson, Sweiss was clearly shocked and strongly denied any involvement. Second, the defendant protests the prosecution's assertion that in the tape-recorded September conversation when Faraj mentioned a witness who would corroborate the solicitation conversation Sweiss responded, "Do you mean Adnan?" referring to Eddie Al-Abbasi's formal name. The government argued during closing argument that this showed that Sweiss admitted that the solicitation conversation occurred and that Adnan [Eddie] Al-Abbasi had witnessed that conversation. The point was re-emphasized during the prosecution's rebuttal when the Assistant United States Attorney said:

> When Bassam Faraj said to him, [Moses Sweiss] "someone is telling the cops, the FBI." He didn't say, "What do you mean?" or "Who could it be?" He said, "You mean Adnan," or "Do you mean Adnan?" Sure, a question, but the question indicates guilty knowledge. There is no way of escaping that.

The defense argues that in the August tape-recorded conversation, when Faraj first told Moses he would say there was a solicitation conversation, Moses strongly denied that such a conversation had occurred. More importantly, the defense argues that it was Faraj who volunteered "Eddie" as the corroborating witness, and that when he did, Sweiss did not know whom Faraj was talking about. The August transcript states:

> M. Sweiss: No, I didn't ask you at all.
>
> Faraj: You deny?
>
> M. Sweiss: Of course I deny.
>
> Faraj: What about if Eddie said he doesn't deny?
>
> M. Sweiss: It is not denial. Who is Eddie?
>
> Faraj: Eddie Al-Abbasi.

Lastly, the defense argues that the details of Faraj's plans to flee the country that Sweiss knew about in the September conversation were actually volunteered by Faraj to Sweiss during the August conversation. Thus, one line of Sweiss' defense was based on a theory that the information concerning the bombing solicitation and the escape that he discussed in the September conversation was told to him by Faraj in the August conversation.

Early in the trial both parties stipulated that the English translation of the September 10th conversation was accurate and could be used at trial. After the government rested its case the defense sought to introduce the August conversation. The district court denied the admission of any part of the transcript, stating:

> Well, I just—I have heard the argument of the government; I frankly thought the same arguments when I read through this in chambers when it was delivered to me this morning.
>
> As I understand it, both declarants are available. I am not getting in the position where you are required to put any-

thing on in your way of defense but you have already indicated that the defendant is going to be testifying in any event and Mr. Faraj, as I understand it, is available to be recalled as a witness for the defendant if you wish to do that.

As I understand it, you are not seeking to impeach Faraj. He hasn't denied that he made the statements so we don't have any prior inconsistent statement use of it.

While we don't know exactly what Mr. Sweiss will testify to today, I take it that he will be testifying in the same light as appeared in this transcript. There is no indication at all that the government is going to claim that this is some recent fabrication on its part so that you would then have a right to introduce this as a prior consistent statement.

It, in a sense, using an inaccurate way to really describe it, it is a self-serving statement of the defendant who is going to be testifying in any event that you are seeking to introduce that violates the hearsay rule and I don't see any ground upon which it should go in.

I find his statement, in any event, in reading it, to be extremely confusing. Apparently, in Arabic, when they talk they don't talk as directly as we do; they sort of talk around things and they use—

[Defense Counsel]: They do not use our syntax, Judge, that is right.

THE COURT:—and they use a lot of allusions.

[Defense Counsel]: That is correct.

THE COURT: And the thing is a completely—sort of a confusing thing that would be subject, I suppose, to all kinds of interpretations.

But I don't find that there is any ground for its admissibility on any basis that I am aware of that you brought to my attention. Again, if you have a specific portion of the Federal Rules of Evidence by which you think that it is admissible I will certainly consider it. Lord, this is a criminal case and I don't want to hamper the defense in any way or deny

you the right to put legitimate evidence into evidence.

\* \* \* \* \* \*

And there may be something in the course of the balance of the evidence that would cause me to change my mind so that it was without prejudice to your right to raise it again if there is a change of circumstances but it just seems to me that I don't know any basis upon which it would be admissible, and I should be treating both sides fairly, applying the rules of evidence evenhandedly.

After an eight-day trial the jury returned a verdict finding defendant Sweiss guilty on all four counts charged in the superseding indictment. Defendant's post-trial motions were denied after a hearing. On September 5, 1985, defendant Moses Sweiss was sentenced to three years' incarceration and placed on consecutive probation for five years. Thereafter, defendant Sweiss filed a timely notice of appeal.

## II

On appeal, the defendant contends that the first transcript was admissible because the August 14th conversation: (a) was not hearsay; (b) was a prior consistent statement; (c) falls within the "state of mind" hearsay exception; (d) falls within the "residual" hearsay exception; and (e) was admissible in the interests of justice and the rule of completeness. We have examined each of these claims in depth and find merit only in the defendant's last claim. However, we must first discuss the government's claim in its brief to this court that "all of those arguments are raised for the first time on appeal."

### A.

■ As we said in *United States v. Carter*, 720 F.2d 941, 945 (7th Cir.1983):

As this court has stated on numerous occasions, "it is a well-established general proposition that a litigant cannot present to this court as a ground for reversal an issue which was not presented to the trial court and which it, there-

fore, had no opportunity to decide." *Holleman v. Duckworth,* 700 F.2d 391, 394–95 (7th Cir.1983).

In more recent cases federal appellate courts have *justly* avoided thousands of issues that the district court had not had an opportunity to fully consider. *See, e.g., United States v. Laughlin,* 772 F.2d 1382, 1392 (7th Cir.1985); *United States v. Hickerson,* 732 F.2d 611 (7th Cir.1984). But because of the frequency of our use of waiver, we must be all the more careful to point out when waiver does not apply.

The government's claim that *all* of the arguments raised by the defendant in this appeal were not presented to the district court is simply inaccurate. Our review of the record shows that every issue asserted by the defendant on appeal was sufficiently, though not perfectly, presented to the district court *and* was ruled on by the district court. For example, Sweiss asserts, but only on appeal, that the August tape-recording should have been admitted because it was part of the *res gestae.* At trial, Sweiss' counsel clearly asserted the transcript was admissible because "the conversation revolves around Mr. Faraj's attempt to depart the jurisdiction ... and those are the acts with which Mr. Sweiss is charged in Count III of the indictment." Defense counsel also clearly argued that the conversation constituted "verbal acts," that it fell within the "state of mind" and the "residual" hearsay exceptions. Many of these issues were also raised in the defendant's pretrial motion to dismiss the indictment and in the defendant's post-trial memorandum in support of his motion for a new trial. As Section C of this opinion explains, the defendant did not establish a sufficient foundation at trial to require the district court to admit the tape-recording under the rule of completeness. But this is an argument that the prosecution did not make below or even on appeal.

Federal Rule of Evidence Rule 103(a)(2) sets forth the steps which must be taken by a party to preserve for review a question concerning the erroneous exclusion of evidence. 21 C. Wright & K. Graham, Federal Practice and Procedure § 5040 (1977). The Rule provides, in pertinent part, that error may be predicated upon a ruling excluding evidence if "a substantial right of the party is affected ... [and] the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." In order to preserve error, Rule 103(a)(2) does not require that a formal offer of proof be made, or that the grounds of error be precisely specified; it is enough if "the record shows, either from the form of the question asked, or otherwise, what the substance of the proposed evidence is." *United States v. Alden,* 476 F.2d 378, 381 (7th Cir.1973); *see also United States v. Gonzalez,* 700 F.2d 196 (5th Cir.1983); *Waltzer v. Transidyne General Corp.,* 697 F.2d 130, 134 (6th Cir.1983).[1]

Defendant's counsel could have made his arguments more clearly to the district court, but he did make all of the arguments to the district court that he now makes on appeal. To require more would be contrary to Rule 103(a) and would exalt form over substance. *See Chambers v. Mississippi,* 410 U.S. 284, 303, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973).

### B.

It is a truism that hearsay is as elusive a legal concept as it is commonplace. Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In general, hearsay statements, such as the tape-recordings in this case, are not admissible at trial. Fed.R.Evid. 802. The September 10th tape-recording that was admitted into

---

1. In *Huff v. White Motor Corp.,* 609 F.2d 286, 290 n. 2 (7th Cir.1979) we held that while Rule 103 does not expressly require that the ground of the objection be stated as a condition to arguing error in the *exclusion* of evidence, such

a requirement is implicit in Rule 46 of the Federal Rules of *Civil* Procedure. There is no applicable provision in criminal procedure, and even if there were, it could only require that the proponent "alert" the trial court to the issue.

evidence in this case, however, was apparently admitted under Fed.R.Evid. 801(d)(2)(A) which provides that a party's own statement, if offered against him, is not hearsay. The defendant did not object to the admission of the translation of this tape-recording and both sides stipulated to its accuracy.

The defendant argues that the earlier tape-recording, recorded on August 14, should have been admitted to explain his later statements recorded in September. He argues that the *complete* truth can only be ascertained if both tapes are played to the jury. This is particularly crucial, the defendant argues, because of the importance the prosecution placed on specific statements made in the September conversation.

As we said in *United States v. Walker*, 652 F.2d 708, 710 (7th Cir.1981), Federal Rule of Evidence 106 codifies the common law rule of completeness:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

"This rule is circumscribed by two qualifications. The portions sought to be admitted (1) must be relevant to the issues and (2) only those parts which qualify or explain the subject matter of the portion offered by the opponent need be admitted. *United States v. McCorkle*, 511 F.2d 482, 486–87 (7th Cir.) *cert. denied*, 423 U.S. 826, 96 S.Ct. 43, 46 L.Ed.2d 43 (1975)." *Walker*, 652 F.2d at 710.

In *Walker* a Chicago firefighter was found guilty after a second trial (the first ended in a deadlocked jury) of extortion. The defendant elected not to testify at his second trial but portions of his testimony from the first trial were admitted into evidence during his second trial. The defendant argued on appeal that the trial judge erred in allowing the prosecution to introduce selected portions of the defendant's prior testimony while refusing to admit

other relevant parts in violation of Rule 106. On appeal we found that "substantial portions" of the excluded testimony were "relevant to specific elements of the Government's proof and explanatory of the excerpts already admitted." *Walker*, 652 F.2d at 711.

*Walker* contrasted with *McCorkle* because in *McCorkle* the excluded testimony did not go to one of the elements of the crime charged, and thus was not relevant. *McCorkle*, 511 F.2d at 487; *Walker*, 652 F.2d at 711 n. 4. *Walker* was also distinguishable from *United States v. Littwin*, 338 F.2d 141, 146 (6th Cir.1964), *cert. denied*, 380 U.S. 911, 85 S.Ct. 896, 13 L.Ed.2d 797 (1965), because the defendant in *Littwin* did not even on appeal specify which portions of a three-hour tape-recording would have been relevant and explanatory. *Walker*, 652 F.2d at 711 n. 4.

■ The Second Circuit in *United States v. Marin*, 669 F.2d 73, 82–83 (2nd Cir.1982), and the Third Circuit in *United States v. Soures*, 736 F.2d 87, 91 (3rd Cir.1984), have both adopted and amplified the test we articulated in *Walker*. Under the doctrine of completeness another writing or tape-recording "may be required to be read [or heard] if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." *Soures*, 736 F.2d at 91, *citing Marin*, 669 F.2d at 84.

■ In this case, portions of the excluded tape-recording clearly explain portions of the admitted second tape and might have been necessary to avoid misleading the trier of fact. The prosecution relied heavily on the portion of the September tape that the government argued showed that Sweiss knew that a solicitation conversation had been held and knew that Eddie Al-Abbasi was present at that conversation. The August tape-recording, although confusing, does demonstrate that the government informant Faraj had told Sweiss that Eddie Al-Abbasi would buttress Faraj's story that Sweiss initiated the bombing scheme. The

August tape-recording also demonstrates that much of the information that Sweiss knew in September about Faraj's plans to flee the country were told to Sweiss by Faraj in the August conversation. Thus, the information excluded went directly to the crime charged and to the defense offered. To use the prosecution's language, "the big evidence against" the defendant was what he appeared to know in the September tape-recording. Without knowing that the information the defendant had was told to him by government informant Faraj, the jury clearly could have been misled.

This excluded information was crucial because the case was essentially a credibility contest between Faraj, the government informant who was a known criminal, and the defendant, the manager of a grocery store with no criminal record and a host of prestigious character witnesses. Like *Walker*, the excluded testimony was clearly "relevant to specific elements of the Government's proof and explanatory of the excerpts already admitted." *Walker*, 652 F.2d at 711. The prejudicial impact of the exclusion was lessened because, unlike *Walker*, the defendant in this case did take the stand and thus did have a chance to explain his statements. In addition, the government informant Faraj also took the stand and was examined by both parties. However, tape-recordings are crucial in credibility contests.

We take judicial notice of the fact that when government investigators direct an informant to attempt to elicit incriminating statements from a suspect, and when the investigators secretly wire the informant, the resulting tape-recordings can be potent and dangerous weapons in the trial arena. As the defendant points out, they are potent because jury members, like most people, are easily convinced that "tape-recordings don't lie," and dangerous because portions of conversations can be isolated from their context and molded into either party's theory of the case. Whenever a party seeks to admit some and exclude other portions of a defendant's statements, the court must carefully scrutinize the material to assure that the jury is given the complete picture.

In this case the prosecutor was adamant that the August tape-recording should not be admitted because it was "confusing." The trial judge tried several times, using his language, to "finesse" the issue by allowing the tape-recording into evidence over the government's objection that it was confusing and then allowing the government ample time to explain it to the jury. The judge's language that we have quoted at length in the fact section of this opinion demonstrates that he held the prosecutor's actions up to particular scrutiny because of his concern that the government not be able to select for trial strategy purposes half of the recordings that helped the prosecution but then object on evidentiary grounds to the defendant's offer of the other half. We wholeheartedly agree with this approach.

As presented to us on appeal, the portions of the August tape-recording that were excluded, more likely than not, misled the triers of fact. These portions therefore meet the standard we articulated in *Walker* because they are relevant not only to the credibility of the defendant, but to the issue at trial. They should, therefore, have been admitted under Federal Rule of Evidence 106.

### C.

While we find that portions of the excluded testimony qualify for admission under Federal Rule of Evidence 106, the defendant failed to lay a sufficient foundation before the trial judge for his refusal to admit the tape-recording to be an abuse of discretion, *Walker*, 652 F.2d at 713, *when it was offered.*

Rule 106 is primarily designed to affect the order of proof. Fed.R.Evid. 106, Advisory Committee's Note. In this case the trial judge's refusal to admit the August tape was without prejudice so that the defendant could again offer the portions of the tape-recording when and if it became relevant and explanatory. The defendant, however, did not offer the tape again.

When defendant's counsel offered the tape-recording he did not articulate that it was admissible under the rule of completeness. Although it is not required, the defendant's counsel did not mention Federal Rule of Evidence 106, nor did he state any of the substance of the rule nor, even when directly asked, was he able to give the court any case law on the point. Under most circumstances, defendant's counsel's general statements that the August tape should be admitted to "explain" or "put in context" the September tape might be enough to alert the court that the rule of completeness was at issue. But here, after extensive questioning by the district court, the defense did not specify the portions of the August tape that we have quoted in the fact section of this opinion that were necessary to explain the September tape. The record shows that neither party, nor the district judge, discussed the requirements of Rule 106.

■ In order to lay a sufficient foundation the offeror need only specify the portion of the testimony that is relevant to the issue at trial and which qualify or explain portions already admitted. *Walker*, 652 F.2d at 710. This is a minimal burden that can be met without unreasonable specificity. For example, in *United States. v. Littwin*, 338 F.2d 141, 146 (6th Cir.1964) the defendant's counsel did not point out "what word, remark or phrase in that part of the tape which was played he would like to have explained or rebutted, or what part of the unplayed tape would be relevant or would throw light upon any word, phrase or remark which the jury had heard." Similarly, Sweiss' counsel did not even alert the judge that the rule of completeness was at issue, let alone what portions of the August tape explained the September tape.

When defense counsel offered the August tape for admission the prosecution had not yet spelled out that the "key" evidence against Sweiss was the portion of the September tape which demonstrated that he knew that Eddie Al-Abbasi was a corroborating witness. Because the September conversation was admitted against the defendant, the defense should have analyzed the tape and anticipated that the portion of the September tape dealing with Eddie Al-Abbasi would be emphasized by the prosecution. The defense then should have pointed this danger out to the trial judge. But even after Sweiss' cross-examination when it became clear that the prosecution was focusing on that segment of the September tape-recording, the defense could have offered portions of the August tape-recording again. At that point the defendant clearly knew what inference the government was arguing should be drawn from the September tape-recording. Alternatively, the defense could have recalled Faraj, asked him what he said in the August conversation, and used the August tape-recording to impeach him. But Sweiss' counsel chose not to follow any of these paths. We cannot reward the defense now for a claim they chose not to make below.

Therefore, we are unable to say that the trial court abused its discretion in excluding the August tape-recording when it was offered. Sweiss' counsel did not at that time specify the portions of the August tape-recording that we find should have been admitted. Nor did he articulate how they were generally relevant or how they qualified or explained any portion of the September conversation. The defendant took the stand and was allowed to articulate his defense. The August tape-recording only buttressed his credibility, and while it should have been admitted, its prejudicial impact clearly does not rise to the level of an abuse of discretion.

III

We find that none of the defendant's other claims have merit and for the above reasons we affirm the holdings of the district court.